**Elsie CLAPP, Employee-Respondent,**

v.

**BROWN SHOE COMPANY, a Corporation, Employer-Appellant.**

No. 22383.

Kansas City Court of Appeals.

Missouri.

May 7, 1956.

Renderer, Nolde & Kleinschmidt, St. Louis, for appellant.

H. K. West, Brookfield, for respondent.

SPERRY, Commissioner.

This is an appeal from a judgment affirming an award of the Industrial Commission in favor of Elsie Clapp, employee-plaintiff, against Brown Shoe Company, a corporation, employer-defendant (its own insurer), because of injuries received by employee. The amount of the award was $2,732, plus $255 for necessary medical service not furnished by employer.

Plaintiff was employed by defendant in its factory at Brookfield. On February 22, 1951, during the noon hour, while descending a flight of stairs in defendant's building, she fell on the top step and slid and bounced to the landing below. That she suffered such a fall is not in dispute. At a hearing before a referee, September 17, 1952, she stated that the fleshy portion of her right buttock, near the spine, struck the steps and she suffered severe bruises; that she reported the accident immediately, and was taken to the office of defendant's physician by a foreman; that her hip was swollen and black; that the physician taped it and sent her back to work; that, two days later, she again saw the physician; that he gave her a "heat treatment and rheumatism pills"; that she was complaining of pain and throbbing in the hip; that he did not take an X-ray; that she again saw him, a few days later, when he gave her another heat treatment and a shot in the right hip, near the lower spine; that she saw him, about a week later, after getting a permit from the foreman; that the pain had been continuous during all of that time; that she, later, saw Dr. Dixon, in Brookfield, and notified defendant's superintendent of that fact; that she saw Dr. Dixon because she was not receiving adequate treatment from defendant's physician; that she was then in pain, running a temperature, and had a large distended hematoma on the hip; that it was four inches in diameter and discolored; that Dr. Dixon took her temperature, took X-ray pictures of the lower back and hip, extracted the blood from the hematoma, and gave her a medical prescription; that defendant later paid Dr. Dixon $44 for his services, rendered from March 5 until about April 1; that she developed a swelling in her right leg and defendant's foreman sent her back to defendant's physician, who told her that the "rheumatism" had gotten down there; that she went back to Dr. Dixon, who advised her to go home and rest; that she was again back to see defendant's physician the last of April or the first of May; that he gave her a heat

treatment; that, in July, Dr. Dixon advised her to see a specialist, and, having no money, she went to the University of Kansas Medical Center; that she was a charity patient; that she was then suffering with pain in her right leg and a tightness around her right leg some ten inches above the ankle; that she was there examined and treated a number of times, by various doctors; that such treatments and trips cost her about $60; that she was then under Dr. Dixon's care, and treatment also, and that he was cooperative with the University doctors; that she later went to the Security Benefit Association Clinic at Topeka, because she was entitled to certain hospital and clinical benefits there; that she was still suffering from the same complaints for which Dr. Dixon and defendant's physician had treated her; that she had developed "shooting, grabbing pains down the leg", extending down the upper right thigh into the calf; that, afterwards, and at the time of the hearing, she suffered similar pains in her left leg; that she was in bed, at the Topeka hospital, for eleven days, with medication every three hours; that the cost to her was $32 plus travel expense; that she then returned to Dr. Dixon, who sent her to Dr. Klemme, at St. Louis, in February, 1952; that she was suffering from severe pains in her lower back, running down both legs and into the toes of her right foot; that she could not ride on a bus because of the pain; that Dr. Klemme hospitalized and X-rayed her; that she returned home and Dr. Dixon gave her a "hypo" to quiet her; that, March 21, she again went to St. Louis and was examined by defendant's Dr. Murphy, who caused her to be X-rayed and who spent from ten to fifteen minutes with her, leaving her crying from pain; that, a few days later, Dr. Klemme hospitalized her for disc removage; that she was in hospital twenty-two days; that the total hospital charge for examination and treatment by Dr. Klemme was $247.70; that his surgical bill was $1000; that she was, during all of this time, under Dr. Dixon's care and treatment; that he changed the bandage and cleansed the incision after the operation; that she saw Dr. Klemme twice in May, and again in July, but that he did not treat her; that her right foot was numb and she was concerned about it; that it was still numb at the time of the hearing; that she had also begun losing her balance and would fall while walking, due to lack of coordination of her legs and feet; that she returned to full time work in July but, in August, her back and leg began hurting so that she ceased to work, on advice of Dr. Dixon, but that she had been employed five days in September, at the time the hearing was held; that she awakens every night because of drawing pains in her right calf; that she cannot bend forward; that Dr. Dixon has prescribed rest; that she has sustained no other injury to the back or leg. She stated that her earnings for the year preceding the accident were from $40 to $42 per week. At the time of the hearing she suffered from a limp, which was noted in the record by the referee.

Defendant placed in evidence hospital records of plaintiff covering a period of several years prior to the accident, and for various illnesses and operations, the majority of which were not shown to have been connected in any way with the injury complained of.

At the conclusion of the hearing it was agreed that further medical evidence might be later submitted.

On April 30, 1953, the referee made an award of permanent partial disability of $27.32 per week for 40 weeks, $1092.80, and for the reasonable cost of medical treatment. Plaintiff applied for and was granted a review by the full Commission.

That hearing was held on December 14, 1954. Plaintiff offered in evidence the depositions of Dr. Dixon and Dr. Forsythe. Defendant objected to the reception of this evidence as being in violation of Commission's rule No. 12, restricting the reception of additional evidence in a hearing before the full Commission after hearing had before a referee. The same objection was noted as to plaintiff testifying regarding her physical condition. The objection was overruled and defendant complains of said ruling.

The hearing before the referee was held on September 17, 1952, and it was then agreed that additional medical evidence might later be submitted by both parties. The referee made his award on April 30, 1953. Plaintiff filed application for review on May 6, 1953. The rule above mentioned was promulgated on September 16, 1953, and became effective October 1, 1953. The rule was not promulgated until four months after plaintiff had applied for a review. The Commission was fully justified in overruling defendant's above objection, in view of the whole record here. It would not have been justified in ruling otherwise, in the interests of justice. Such a ruling, in effect, would have made the rule retroactive, although it does not appear that such was the intention of the Commission at the time the rule was adopted. See 73 C.J.S., Public Administrative Bodies and Procedure, § 107, p. 429.

Dr. Dixon testified to the following effect: that he examined and treated plaintiff March 1, 1951; that she had a large discolored hematoma on the right hip, which was aspirated by needle; that there was tenderness down the posterior aspect of the right thigh and right calf muscle; that the diagnosis was "hematoma sciatica right, cause undetermined at that time"; that he saw her March 2 and 3. On March 5 the hematoma was again aspirated and the right hip was X-rayed; that she was given penicillin; that, on March 10, the hematoma was still draining; that she was treated on March 12, 24, and 28, April 4, 10, and 15; that he X-rayed the pelvis and lower spine on April 4, that, on May 28, he advised her to see a neurologist and released her for work; that he saw her on July 14; that there was marked tenderness at the site of the hematoma, tenderness in the right thigh and lower leg, restriction on forward bending, considerable pain in right leg, and sciatica pain; that he saw her through August, September, November and January, 1952; that he contacted Dr. Klemme, a neuro-surgeon in St. Louis, and arranged for plaintiff to see him; that, February 22, 1952, Dr. Klemme advised operation and, on March 24, removed discs at L4–L5 and at L5–S1; that witness dressed the wound and administererd novocain for pain; that he saw her through April, May and June; that he saw her in February and March, 1953, during which time he gave her medication; that in February, 1953, she was in Missouri Baptist Hospital; that he referred her to Dr. Forsythe, who saw her on April 27, 1953; that they consulted together on the case and that witness saw her in May and June, August and November, 1953; that, on February 18, 1954, Dr. Forsythe opened the wound and explored it; that witness saw her July 21, 1954; that her condition had improved but he advised the continued wearing of back support, and no work at pushing operations involving the right foot; that her permanent disability is 30% to the body as a whole; that he has never medically discharged her; that his unpaid bill is $255; that her physical disability could have been caused by the fall, and by her subsequent operations; that he has no doubt but that her pain is due to the ruptured discs.

Dr. Forsythe testified to the effect that he specializes in neurosurgery; that he first examined plaintiff April 27, 1952, and advised exploratory operation; that she again consulted him January 25, 1954; that her right reflex was absent and the left was materially diminished; that there was marked sciatic tenderness along the right nerve; that he operated and found the nerves at 4th and 5th lumbar interspaces adherent to all surrounding structures; that he severed the first sensory part of the sacral nerve at the 5th lumbar interspace to relieve the sciatica; that he advised her to seek different employment so as to avoid stooping and bending. He stated that a fall, such as plaintiff suffered, could have caused protusion of the discs which were removed by Dr. Klemme; that he has an unpaid bill of $250 for his services; that the hospital bill was $258.15; that her disability is 20 to 25% of the body as a whole.

At the hearing before the Commission plaintiff testified to the effect that she had undergone surgery from Dr. Forsythe since the hearing before the referee; that she is unable to return to power machine work,

which had been her occupation for from ten to fifteen years; that she now has a slight paralysis of the right leg and the toes are getting stiff; that she wears a corset with steel braces; that she cannot do all of her housework, cannot "squat" or lift; that Dr. Klemme removed two discs and Dr. Forsythe later, severed a nerve and removed scar tissue at the site of the first operation.

■ Defendant's contention that there is not competent substantial evidence to support the Commission's findings and award must be denied. The evidence is to the effect that she had worked as a machine operator for from ten to fifteen years; that she had suffered no prior injury or other disability to her lower back, spine, and leg; and that she has been disabled and has suffered almost constantly from and after the fall. The Commission could reasonably have found, as it did find, that her disability stems from injuries suffered when she fell. It is true that no doctor stated positively that the injury to the spine, resulting in ruptured discs, was caused by the fall, but Dr. Dixon stated that the fall could have caused it. Dr. Forsythe stated that the fall could have caused the discs which Dr. Klemme removed at surgery to protrude: that lifting, bending or falling has a lot to do with the rupture of discs. Plaintiff did suffer a fall, while in the course of her employment, from which she suffered severe injuries. The nature, extent, and duration thereof was for the Commission to determine under the evidence in this case. Moorman v. Central Theatres Corporation, Mo.App., 98 S.W.2d 987, 989; Kimmie v. Terminal R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 562.

■ Plaintiff testified to the effect that her average weekly earnings, prior to the accident, were $41 or $42. Section 287.-250, Par. 1 RSMo 1949, V.A.M.S., applicable in this case, provides that compensation shall be computed on the basis of annual earnings prior to the injury. The Commission found her earnings to have been $41 per week. Such a finding could reasonably have been made under the evidence.

■ The Commission also found that plaintiff's injury resulted in "25% permanent partial disability of the body as a whole." The medical evidence supports that finding. She was awarded compensation for "100 weeks at $27.32 per week, $2732.00."

■ Section 287.160 RSMo 1949, V.A. M.S., which was controlling at the time the accident occurred, provided: "Compensation shall be payable on the basis of sixty-six and two-thirds per cent of the average earnings of the employee * * * but in no case shall the compensation exceed twenty-five dollars a week." That section was repealed and a new section was enacted in lieu thereof. Laws Missouri 1951, page 621, Section 287.160. The new section provides for payment of compensation at the rate of sixty-six and two-thirds per cent of earnings "but in no case shall the compensation exceed thirty dollars a week." However, that statute was not approved until June 16, 1951. Therefore, the law governing this case is as stated in the preceding paragraphs hereof. The award is excessive in the amount of $232.

■ Defendant complains of the action of the Commission in awarding $255 for "value of necessary medical aid not furnished by employer or insurer." Apparently this award was for payment of Dr. Dixon's unpaid account. The evidence is to the effect that defendant's physician, to whom plaintiff at first was taken by her foreman, wholly failed to give her adequate medical attention. Plaintiff's testimony to the effect that she informed defendant, within a few days after the accident, that she had seen Dr. Dixon professionally is uncontradicted. Thereafter she continued to consult with and be treated by Dr. Dixon and defendant paid him for some services that he rendered. Dr. Dixon referred her to Dr. Klemme, collaborated with him and, after Dr. Klemme operated, he rendered after surgical care to plaintiff. Dr. Klemme was paid by defendant. Under the facts here in evidence we hold that the Commission could reasonably have awarded $255 for medical expense, and that such award was lawful

The award for compensation should have been at the rate of $25 per week for 100 weeks, a total of $2,500. The award, as made, is excessive in the amount of $232. However, we are authorized to modify the final award. Section 287.490 RSMo 1949, V.A.M.S.; Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215, 222.

The award should be affirmed in all respects except as to the amount of compensation, which should be modified to $25 per week for 100 weeks, a total of $2,500; and the award for $255 for necessary medical services not furnished by defendant should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. Plaintiff is awarded compensation in the amount of $25 per week for 100 weeks, a total of $2500; and the award for $255 for necessary medical services not furnished by defendant, is affirmed.

All concur.